## SUCESIÓN ORTIZ *v.* SUCESIÓN ORTIZ.

### Apelación procedente de la Corte de Distrito de

### Guayama.

No. 10.    Resuelto en Mayo 25, 1905.

OBLIGACIONES.—PRUEBAS.—La prueba de las obligaciones incumbe á la parte que reclame el cumplimiento de las mismas.
ID.—PRUEBA DE TESTIGO.—La apreciación de la fuerza probatoria de las declaraciones testificales, no es materia puramente discrecional en los Tribunales, pues éstos deben sujetarse, en tal apreciación, á las reglas de la sana crítica.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Rossy.*

Abogados del apelado: *Sres Hartzell y Rodríguez Serra.*

EL JUEZ ASOCIADO SR. FIGUERAS, emitió la opinión del Tribunal.

El Letrado Don José R. Aponte con toda la documentación que creyó necesaria para justificar la personalidad y acción de sus representados, presentó ante el Tribunal de Humacao el 27 de Julio de 1904 demanda en juicio declarativo á nombre de Don José Ortiz por su propio derecho y como tutor de los menores hijos

de Don Manuel Ortiz, Da. Juana María y Don Regino Ortiz contra la Sucesión de Don Regino Ortiz, compuesta de Da. Nemesia, Da. Josefa, Da. Juana Francisca y Da. Regina Ortiz, todas menores de edad y representadas por su madre natural Da. Rosario Cintrón, para que otorgue á favòr de sus clientes escritura de venta de una porción de terreno y de parte de una finca urbana que su causante Don Regino Ortiz les vendió según documento privado que copiado á la letra dice así:

"Con esta fecha vendo á mis hermanos Don Manuel y José Ortiz del ganado que me corresponde tener en la Estefanía, más la parte de terreno que me corresponde de ésta y de una casa en 4 calles "Arroyo", todo por la suma de dos mil pesos importe recibido en moneda provincial, á entera satisfacción mía.—Regino Ortiz.—Testigo, Ceferino Laguá.—Testigo, J. M. Martínez.—A más les vendo una yegua baya parida de macho; otra id. baya sin cría; una potra baya cayo y negro y otra baya; y un potro bayo cabo y negro, todo por la suma de doscientos pesos.—Este importe no lo he recibido y queda para una casa en nombre de Nemesia, Josefa y Juana Francisca, las hijas mías teniendo derecho la madre de éstas á disfrutar de ella.—Arroyo, Agosto 10, 1899.—Regino Ortiz.—Testigo, J. M. Martínez.—Testigo, Ceferino Laguá."

Murió el comprador Don Manuel Ortiz y por tal razón la demanda se establece á nombre de sus hijos representados por su tutor Don José Ortiz que igualmente figura como comprador en el documento anteriormente insertado y como también falleció el vendedor Don Regino Ortiz con fecha 3 de Diciembre de 1899, la demanda se dirije contra sus hijas representadas por su madre natural Da. Rosario Cintrón.

Con esos antecedentes se establece la referida demanda citando en su apoyo las disposiciones generales del Código Civil que se refieren á los contratos, algunas referentes á la eficacia de los mismos, especialmente el No 1 del Art. 1280 que prescribe que deben constar en

documento público los contratos que tengan por objeto la trasmisión de derechos reales sobre bienes inmuebles, otros artículos relativos á la naturaleza y forma del contrato de compra-venta, y varios referentes á las sucesiones.

La madre de los menores demandados al contestar la demanda negó la autenticidad del documento privado base capital de la demanda y añade que aunque fuera auténtico no es constitutivo de contrato alguno y que por tanto se declare nulo, ineficaz y falso, tanto por carecer de los requisitos esenciales de todo contrato, cuanto por no concurrir en él las formalidades que la ley determina y á la vez establece reconvención y solicita que se declare que el demandante Don José Ortiz haga inmediata entrega á los menores demandados de los bienes relictos por su padre Don Regino Ortiz.

Este pleito, por virtud de la Ley aprobada en 10 de Marzo del año próximo pasado para reorganizar el sistema judicial de Puerto Rico, pasó á la Corte de Distrito de Guayama en donde se tramitó, y el Juez después de practicadas las pruebas consistentes en documental y testifical, resuelve:

"Que la Ley y los hechos están á favor de los demandados y que éstos vayan libres de toda reclamación respecto á esta demanda, con las costas de este pleito al demandante y que se libre ejecución contra sus bienes para satisfacer esta sentencia. Dada, pronunciada y publicada en corte abierta hoy día 30 de Diciembre de 1904.— Charles E. Foote.—Angel García, Secretario."

Contra esta sentencia interpuso apelación Don José Ortiz por sí y en la representación que ostenta, valiéndose para ello del Abogado Don Enrique Lloreda quien en 23 de Enero de 1905 lo hizo saber por escrito á la parte contraria y por conducto del Marshal Don José J. Vidal.

Se presentaron en esta Corte Suprema las copias cer-

tificadas por el Abogado del apelante, y Don Manuel F.
Rossy á su nombre presentó un alegato en el que hace
una relación del pleito, consigna el resutado de la prueba,
apreciándola en su favor y solicita que se declare con
lugar la demanda con las costas á la parte demandada.

La parte apelada compareció por medio de los Aboga-
dos Sres. Hartzell y Rodriguez Serra y después de un
análisis de la prueba que considera insuficiente para el
fin que se propone el demandante, sostiene que la Corte
de Guayama tuvo poder discrecional para apreciar la
prueba testifical practicada en este pleito y esa discre-
ción judicial no está sujeta á revisión tanto más cuanto
que el apelante no alega y prueba satisfactoriamente
que se haya cometido error en la apreciación de dicha
prueba y con tales razonamientos sostiene esta parte la
confirmación de la sentencia, si bien se insinúa que el
Juez debió resolver sobre la reconvención que al con-
testar la demanda formuló la parte demandada.

La cuestión está reducida á claros y sencillos términos.
Con un documento privado redactado en forma inco-
rrecta y anómala se establece esta demanda y se preten-
de que los hijos del vendedor por medio de su represen-
tante legal, que es su madre, otorguen escritura de venta
á favor del demandante de todos los bienes á que se
refiere dicho documento privado.

La parte demandada niega la autenticidad de dicho
documento y planteada así la cuestión correspondía al
actor cumplir con el artículo 1214 del antiguo Código
Civil que equivale al 1182 del Revisado y los cuales dis-
crepancia prescriben que incumbe la prueba de las obli-
gaciones al que reclama su cumplimiento. ¿Ha cumpli-
do el actor con este precepto?

Veamos.

Uno de los dos testigos que firmaron el documento pri-
vado, y desde luego reconoce su firma, dice que la del
vendedor Don Rafael Ortíz se parece á la que usaba,

que el documento se lo dió dicho Señor para que lo firmase, que allí estaban Don Manuel y Don José Ortíz que eran los compradores, y además Juan Anaya, Cornelio Anaya, Luis Vans y otras personas que no recuerda; que aunque vivía al lado de la casa de Don Regino no sabe si éste estaba enfermo ni sabe si ocurrió algo grave en dicha casa el día en que se firmó el documento, que desde que se firmó el documento conoció en posesión de la finca "Orozco" ó "Estefanía" á los compradores Don Manuel y Don José Ortíz.

El testigo Don Luis Vans que un día del año 99 estaba en casa de Regino Ortiz y que allí se hizo un documento pasándole éste lo que tenía á sus hermanos, Manuel y José, y que lo supo porque éstos se lo dijeron; que no puede reconocer el documento porque no lo leyó, que el día en que se firmó el documento no ocurrió nada grave en la casa de Regino.

El testigo Juan Anaya que Regino Ortiz escribió el documento, que estaba en la casa porque era su familiar, reconoce la firma de Ortiz que se enteró del contenido del documento porque se lo dijeron Manuel y Pepe Ortiz, que no sabe si el hijo de Regino murió ó no el mismo día en que se firmó el documento.

Pedro J. Massanet como Juez Municipal que fué en 1892 en el pueblo de Arroyo reconoce su firma en dos actas de nacimiento de dos hijas de Regino Ortiz y añade que la firma de éste que aparece en las actas fué estampada ante él y que dicho Sr. á quien conocía fué el mismo que se presentó y firmó.

El testigo Miguel Llanó que firmó como testigo las actas de inscripción del nacimiento de dos hijas de Regino Ortiz dice que conoció á éste que lo vió firmar y comparando su firma con la del documento privado dice que se le parece, que tienen bastante parecido y que la letra es igual.

La parte demandada presenta los testigos siguientes:

Enrique Vidal vivía entonces en la casa de Regino Ortiz asistiéndolo en su grave enfermedad que estaba en cama, y que además de su enfermedad estaba como medio loco por la gravedad de su hijo á quien quería mucho, que ese hijo murió en 10 de Agosto de 1899, pero esto no se le dijo á Regino por no agravarle más, que conoce á José Martínez y á Ceferino Laguá (estos dos firmaron el documento como testigos) que dichos individuos el 10 de Agosto de 1899 no estuvieron en la casa de Regino y solo vió á Martínez por la noche en el velorio del niño muerto, que como doce ó catorce días después de la muerte de Regino Ortiz, padre del niño fallecido, le vino á ver Ortíz y le dijo que la madre de los hijos de Regino era una mujer joven y podía malversar los bienes que le correspondían á sus hijos y le presentó para que lo firmase un documento como que el declarante había presenciado un convenio hecho entre los hermanos Ortiz, Regino, Manuel y José; que cuando le llevaron el papel no tenía firmas y menos la de Regino porque ya había muerto de su padecimiento del pecho.

Deogracia Mariani habla también de la gravedad de Regino Ortiz y de la muerte de su hijo ocurrida el 10 de Agosto de 1899, que nunca vió en la casa de Regino ni á Luis Vans ni á José Martínez, que Regino se entendía en sus bienes y cuando estaba muy malo rendía sus cuentas, como lechero que era el declarante, á la mujer de Regino nombrada Rosario Cintrón.

Federico Virella conforme también con la gravedad de Regino y muerte de su hijo en la fecha indicada; que Regino mientras pudo manejó sus intereses, que después de su muerte José Ortiz le ha pasado rentas á su esposa. que el 10 de Agosto de 1899 estuvo en la casa de Regino para asistir al entierro de su hijo; que iba con frecuencia á ver á Regino porque era masón y estaba comi-

sionado por la Logia para saber de su salud, y dicho día estaba el enfermo en la cama.

Marcos Basora también testigo de la demanda declara sustancialmente conforme con el anterior.

Después de estudiar detenidamente el asunto sometido hoy á nuestro exámen, se llega á la conclusión de que el Juez sentenciador apreció debidamente la prueba testifical que es realmente la que puede decidir la contienda establecida; pero la facultad del Juez de la Corte de Guayama no es en este caso discrecional sino que la apreciación de ese género de prueba ha de ser conforme á las reglas de la sana crítica, reglas que también debe tener en cuenta esta Corte Suprema para decidir la cuestión que á su consideración está sometida.

En primer lugar llama la atención que estando firmado el documento por Regino Ortiz como vendedor y habiendo fallecido no se haya reconocido su firma por peritos calígrafos y se haya cotejado con otras indubitadas para deducir su autenticidad impugnada por la parte contraria. Es también original que habiendo firmado el referido documento como testigo Don Ceferino Laguá no haya declarado sobre la certeza del contrato ni sobre la legitimidad de su firma y la del vendedor Don Regino Ortiz.

No importa que el otro testigo Don José M. Martínez haya llenado esos requisitos, porque esta declaración hay que acogerla con cierta reserva, toda vez que llega á desconocer un hecho importante que debía llenar de pena y tristeza á Regino Ortiz cual fué la muerte de su hijo mayor ocurrida en el mismo día en que Martínez dice que firmó el documento. Esa fecha no ha debido ser olvidada por Martínez.

Es también muy raro que teniendo recibida Regino Ortiz la cantidad importe de la venta del terreno con anterioridad á la fecha de ese documento, se eligiese un día tan angustioso para Regino y su familia para redac-

tar y firmar ese documento. Si ya Regino había recibido el precio de la venta del terreno, había confianza en él y nada se arriesgaba de nuevo con esperar un poco más hasta que siquiera comenzase la resignación del atribulado padre.

Los demás testigos de la parte actora no arrojan con sus declaraciones luz sobre este asunto, al extremo de que Luis Vans y Juan Anaya no leyeron, dicen, ese documento, y supieron su contenido por la referencia de Manuel y José Ortiz interesados en el contrato como compradores.

Pero veamos como se contradice todo y vienen á quedar sombras y dudas en la conciencia de un severo juzgador.

Enrique Vidal vivía el 10 de Agosto de 1899 en la casa de Regino Ortiz que estaba gravemente enfermo y bajo la pesadumbre en ese día de haber perdido un hijo, no vió en todo ese día en la casa á ninguno de los testigos firmantes ni supo que se hiciera ninguna operación, y añade que doce ó catorce días después de la muerte de Regino Ortiz, bajo el supuesto que su viuda malversaría los bienes de sus hijos, se le propuso por José Ortiz que firmase un documento creditivo de un convenio entre los hermanos Ortiz, á lo cual se negó Vidal.

Todos los demás testigos están conformes en la gravedad de Regino y muerte de su hijo el 10 de Agosto de 1899; todos ellos se encontraron en la casa á diferentes horas y ninguno refiere nada respecto á la redacción y firma de ese documento, y es de presumir que nada se hiciera en ese día de duelos y de penas para la familia de Regino Ortiz. Suponer lo contrario es inhumano, cuando nada hay que demuestre la necesidad y urgencia del caso.

Todas esas razones convencen del acierto con que procedió el Juez de la Corte de Guayama al resolver como resolvió este litigio empeñado entre miembros de una

misma familia, y en el que se ventilan intereses que pueden corresponder á menores hijos de la demandada.

El Juez nada resolvió en su sentencia sobre la reconvención que al contestar la demanda se formuló, pero el fallo se consintió por la parte demandada y además de que no hay en el record méritos bastantes para una resolución acertada sobre este punto, siempre resultaría que de resolverse en esta segunda instancia de modo favorable á la reconvención, se privaría á la parte demandante del recurso de apelación sobre el extremo de dicha reconvención y esto no sería justo ni equitativo.

Así las cosas y entendiendo que el Juez ha procedido con toda discreción y acierto en este pleito, proponemos la confirmación de su sentencia, con imposición de las costas á la parte apelante.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados Hernández, MacLeary y Wolf.